**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STUART ROSENBERG,<br><br>Plaintiff,<br><br>v.<br><br>THE HOME DEPOT U.S.A., INC., A Foreign Corporation, d/b/a THE HOME DEPOT,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 16-cv-5272<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stuart Rosenberg brings this action against Defendant The Home Depot USA INC., for his injuries suffered as a result of Defendant's alleged negligence. Currently before the Court is Defendant's motion for summary judgment [37]. For the reasons set forth below, Defendant's motion [37] is granted. The court will enter final judgment and close the case.

## I. Background

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits: [37-1–37-5], [49–51]. The Court construes the facts in the light most favorable to the nonmoving party—here, Plaintiff. The following facts are undisputed unless otherwise noted. "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." *King v. Chapman*, 2013 WL 6709623, at *3 (N.D. Ill. Dec. 16, 2013).

On April 22, 2014, Plaintiff was shopping at one of Defendant's stores in Niles, Illinois around midday. [37-1, ¶ 6.] He proceeded to the aisle in the garden area that contained the product

he wanted to purchase. [*Id.* ¶ 7.] Part of the garden area was shaded and part was "in bright sunlight." [*Id.* ¶ 8.]

As he approached the aisle, Plaintiff observed "some sort of large machine" in the aisle.[1] [*Id.* ¶ 9.] An employee was "not far from this vicinity" (where the forklift was located) and had advised Plaintiff that the product he wanted was located in that aisle. [*Id.* ¶ 11.] Before Plaintiff entered the aisle, he observed that, "[t]here was enough space for [him] to get by the forklift, "so he proceeded." [*Id.* ¶ 12.] Specifically, Plaintiff testified that there had to be "a few feet, because I didn't have to squeeze myself through." [*Id.* ¶ 13; see also 37-4, at 33:4–9.]

As Plaintiff entered the aisle, his attention was "in several different places." [37-1, ¶ 14.] Plaintiff "noticed the item, on the shelf across [the aisle from him], that [he] was looking for." [*Id.* ¶ 15.] "Almost simultaneously, [he also] noticed that this machine was a forklift truck and that there were forks almost directly beneath [his] feet." [*Id.* ¶ 16.] As Plaintiff explained,

> [S]everal things happened simultaneously. As I made my way around the machine, I didn't have to squeeze through. I just had to sort of walk around the machine to get to where I was going. But because the forks were down on the ground, it wasn't apparent until I was upon them that there were forks there, so I ha[d] the awareness that there are forks there. The forks [were] in the shade, whereas, I had been -- the rest of the machine was -- in the bright sunlight. So they become [sic] visible in the sort of murky darkness of the haze -- * * * I notice[d] they[ ] [were] there, and I attempt[ed] to step over them.

[37-4, at 37:8–19.] Asked to explain why he didn't see the forks, Plaintiff later stated,

> [T]he reason I didn't see the forks is that the forks were extending into the darkness, okay. The color of the forks, that kind of gun metal color, is almost exactly the same color as the concrete and the darkness.[2] So I didn't see the forks, because, first of all, the forks were sticking into the aisle; and, second of all, because in the contrast between the sunlit part of the garden, the contrast was so intense that they simply disappeared in the shadows. By the time I did see them, I simply made the

[1] Plaintiff maintains that he did not realize the machine in question was a forklift until he saw the forks immediately before attempting to cross them. [51, ¶ 10.] Nonetheless, the court will refer to the machine as a forklift for simplicity.

[2] Although Defendant disputes that contention, [51, ¶ 19], the Court assumes that the forks were almost the same color as the floor given its conclusion that the fact is immaterial to the resolution of the motion.

> assumption that they must be down, because the forklift is parked, and, so if they're down, I can just step over them. And I thought I did.

[37-4, at 107:18–108:8.] Plaintiff's foot contacted the first fork, however, and he fell. [37-1, ¶ 21.] Plaintiff had not been carrying anything when he entered the aisle or fell. [*Id.* ¶ 22.]

On or about April 11, 2016, Plaintiff filed suit against Defendant in the Circuit Cook of Cook County seeking damages for personal injuries under a premises liability theory. [1, ¶¶ 1–2.] Defendant removed the case to this Court on May 17, 2016. [1.] The Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1446 because the parties are citizens of different states and plaintiff has submitted an expert report that opines Plaintiff will suffer well over $300,000 in lost future earnings. [37-1, ¶¶ 1–5.] Venue is proper in this District because the alleged events giving rise to Plaintiff's claims occurred within the Northern District of Illinois.

The Court discusses additional facts below where relevant to Plaintiff's claims.

## II. Summary Judgement Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id.* In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor (here, Plaintiff). *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But Plaintiff "is only entitled to the benefit of inferences supported by admissible evidence, not

those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation and quotation marks omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. Analysis

Defendant seeks summary judgment on the basis that Plaintiff has failed to produce facts upon which a reasonable fact finder could conclude that Defendant owed a duty to Plaintiff to prevent his injury. In particular, Defendant argues that the forklift forks over which Plaintiff tripped constituted an open and obvious condition, the fact of which Defendant argues means that Defendant did not owe Plaintiff a duty. Plaintiff disputes that the forks were open and obvious, and asserts that even if they were, the exceptions to the doctrine apply and Defendant still owed Plaintiff a duty.

Because "state law provides the substantive law in a diversity action," *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006), the Court applies Illinois negligence law. To succeed on his negligence claim under Illinois law, Plaintiff must establish that (1) Defendant owed him a duty, (2) Defendant breached that duty, and (3) Defendant's breach proximately caused his injury. *Wilfong v. L.J. Dodd Constr.*, 930 N.E.2d 511, 519 (Ill. App. Ct. 2010). Whether a duty exists is a question of law to be determined by the court. *Fulk v. Ill. Cent. R. Co.*, 22 F.3d 120, 125 (7th Cir. 1994).

In the most general sense, "[d]uty is determined by asking 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.'" *Bucheleres v. Chi. Park Dist.*, 665 N.E.2d 826, 831 (Ill. 1996) (quoting *Ward v. K Mart Corp.,* 554 N.E.2d 223, 226 (Ill. 1990)). But, practically speaking, "the concept of duty in negligence cases is very involved, complex and indeed nebulous." *Ward,* 554 N.E.2d at 226 (quoting *Mieher v. Brown*, 301 N.E.2d 307, 310 (Ill. 1973)). "The four factors courts typically consider in determining whether a duty exists are: (1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of

guarding against injury; and (4) the consequences of placing that burden on the defendant." *Wilfong,* 930 N.E.2d at 519; see also *LaFever v. Kemlite Co.,* 706 N.E.2d 441, 446 (Ill. 1998).

**A. The forklift forks over which plaintiff tripped were an open and obvious condition.**

"In Illinois, the open and obvious doctrine is an exception to the general duty of care owed by a landowner." *Park v. Ne. Ill. Reg'l Commuter R.R. Corp.,* 960 N.E.2d 764, 769 (Ill. App. Ct. 2011). This is because "persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Bucheleres,* 665 N.E.2d at 832; see also *Ward,* 554 N.E.2d at 230 ("Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition."). Thus, "[i]n cases involving obvious and common conditions * * * the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition." *Bucheleres,* 665 N.E.2d at 832. "The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Id.*

"Whether a dangerous condition is open and obvious may present a question of fact." *Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (2014). However, "where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Id.* "The term [o]bvious denotes that both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Prostran v. City of Chicago*, 811 N.E.2d 364, 368 (Ill. App. Ct. 2004) (quotations and citations omitted). "Whether a condition is open and obvious depends on the objective knowledge of a reasonable person, not the plaintiff's subjective

knowledge." *Id.* "In other words, 'if a reasonable person with the plaintiff's knowledge of the situation would have appreciated and avoided a hazard created by the defendant's actions, then from the defendant's perspective the plaintiff's injuries were neither foreseeable nor likely.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 907 (7th Cir. 2018) (quoting *Smith v. MHI Injection Molding Mach., Inc.*, 2014 WL 1516592, at *5 (N.D. Ill. Apr. 18, 2014)).

Here, the first question the Court must answer is whether the fact that Plaintiff saw the forks of the forklift—before he attempted to step over them, tripped, and fell—means that the forks were an open and obvious condition as a matter of law. Plaintiff asserts that they cannot be open and obvious because "the forks of the forklift were not visible to a reasonable person exercising ordinary perception as Mr. Rosenberg approached the forklift" and because "once the forks were apparent the fact that they were raised from the ground was not apparent." [48, at 4–5 (citing 37-4, at 37:8–19, 104:15–24, 108:1–4).] Plaintiff's arguments are unavailing.

In *Dunn v. Menard, Inc.*, the Seventh Circuit addressed whether the fact that the plaintiff and his son had differing "interpretation[s] of the physical nature of the stack of insulation that fell" precluded summary judgment. 880 F.3d 899, 906–07 (7th Cir. 2018). The court concluded that it did not because regardless of their interpretations of what they were seeing, both plaintiff and his son agreed that the stack was "unstable," and both testified that the condition was obvious. *Id.* In fact, the parties' joint statement to the court went so far as to state, "'[i]t was obvious to Plaintiff that the stack was leaning and unstable,' so much so that plaintiff told his son to 'be careful,' 'keep an eye on the stack of insulation,' and 'be wary of where [he was] and what [he was] moving.'" *Id.* at 907. The court rejected the Plaintiff's contention that he did not recognize the inherent risk because if he had, "he would have had no reason to monitor the insulation for five

minutes to determine whether 'it was safe to proceed with loading the insulation in the van.' Nor would he have needed to warn his son to be mindful of his surroundings." *Id.* at 908.

Here, it is undisputed that Plaintiff did not recognize that the machine he had stepped next to was a forklift until he the saw the forks of the forklift at the exact same time he spotted the item he was looking for across the aisle. [37-1, ¶¶ 15–16.] At that moment, however, Plaintiff testified that, "I notice they're there and I attempt to step over them." [37-1, ¶ 20; 37-4, at 37:21–22.] The fact that he "was not able to see the forks of the forklift as he entered the aisle" and that "because the forks were down on the ground, it wasn't apparent until [he] was upon them that there were forks there" are immaterial. [37-4, at 32:14–15, 37:12–14).] Regardless of when exactly Plaintiff perceived that he had walked past a forklift, Plaintiff knew that to reach the item he wanted he would have to either step over the forks of the forklift or walk around them. The Court therefore concludes that the tripping hazard posed by the forks of the forklift was an open and obvious hazard.

None of the facts put forward by the Plaintiff regarding the visibility of the forks—that he could not see the forks when he entered the aisle, that the forks were in shadows, or that the forks resembled the color of the floor—convince the Court otherwise. See, e.g., *Peters v. R. Carlson & Sons, Inc.*, 70 N.E.3d 196, 202 (Ill. App. Ct. 2016) (concluding that a condition was open and obvious hazard as a matter of law despite the fact that the lighting where plaintiff fell was not very good, given he also testified that the lighting was sufficient to see where he was going and that he knew the condition of the parkway). Likewise, the fact that Plaintiff assumed that the forks were on the floor—in reality they were 2–3 inches above it—does not negate the open and obvious nature of the condition given Plaintiff's own statement that he clearly understood the forks were there. *Cf. Bujnowski v. Birchland*, Inc., 37 N.E.3d 385, 396–97 ("the danger of a dive into water

is 'open and obvious' * * * because [the plaintiff] knows that, as a body of water, it might be too shallow for a safe dive."). Regardless of Plaintiff's understanding of the forks' location, a reasonable person exercising ordinary perception, intelligence, and judgment would have appreciated that the forks posed a tripping hazard and acted accordingly. See *Bujnowski*, 37 N.E.3d at 388 ([T]he test of openness and obviousness [is] not what the plaintiff actually knew at the time, but what he had reason to suspect and could have learned.") Viewed from this perspective, especially if the forks were as difficult to see as Plaintiff asserts, a reasonable person would have taken actions to ascertain exactly where the forks were before stepping over them or would have simply walked around them. Therefore, the forklift forks constituted an open and obvious condition.

The cases cited by Plaintiff to the contrary are easily distinguishable. None of the plaintiffs in those cases acknowledged that they saw the hazard in question. See *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 732 N.E.2d 596, 601 (2000) (noting plaintiff and another witness testified that that they had not seen the defect in the mat over which the plaintiff fell until after the plaintiff's accident, while another witness had previously observed defects in the mat); *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 122 (2d Cir. 2000) (finding a question for the jury where Plaintiff backed up while looking at an item on shelf above eye level and fell over a pallet sitting on the forks of a forklift behind her); *Delvin v. Home Depot USA, Inc.*, 2013 WL 6835409, at *5–6 (M.D. Pa. 2013) (concluding reasonable minds could differ whether an elderly man could see a forklift fork given it was obscured by shadow and possibly his daughter who was walking in front of him before his fall). In fact, in both *Buchaklian* and *Delvin*, the key factual question for the jury was whether the defect was in fact visible to the plaintiffs. 732 N.E.2d at 601; 2013 WL

6835409 at *5–6. Here, there is no dispute that Plaintiff actually saw the forklift fork before he attempted to step over it and fell.

Nonetheless, the Court must consider whether an exception to the open and obvious doctrine applies. "Exceptions to the rule make provision for cases in which 'the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.'" *Bruns*, 21 N.E.3d at 691 (quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)). "Illinois law recognizes two such exceptions" in premises liability cases: "the 'distraction exception,' and the 'deliberate encounter exception.'" *Id.* (quoting *Sollami v. Eaton,* 772 N.E.2d 215, 224 (Ill. 2002)). "Where an exception to the open and obvious rule applies, the outcome of the duty analysis * * * is 'reversed.'" *Id.* (quoting *Belluomini v. Stratford Green Condominium Ass'n*, 805 N.E.2d 701 (Ill. App. Ct. 2004). That is, "[w]hereas operation of the open and obvious rule negatively impacts the foreseeability and likelihood of injury, application of an exception to the rule positively impacts the foreseeability and likelihood of injury." *Id.*

Neither exception applies here. The deliberate encounter exception applies only "where the possessor [of land] has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Id.* (alteration in original) (quoting *Sollami,* 772 N.E.2d at 223). "The deliberate encounter exception has most often been applied in cases involving some economic compulsion," *Sollami,* 772 N.E.2d at 224, such as when a plaintiff "is forced to choose between facing danger and neglecting his duties" to an employer. *Atchley v. Univ. of Chi. Med. Ctr.*, 64 N.E.3d 781, 791 (Ill. App. Ct. 2016); see also *Kleiber v. Freeport Farm & Fleet, Inc.*, 942 N.E.2d 640, 648 (2010) ("The deliberate-encounter exception recognizes that individuals will make

deliberate choices to encounter hazards when faced with employment concerns and that those encounters are reasonably foreseeable by possessors of property.”). No such compulsion was present here.

The Illinois Appellate Court’s opinion in *Kleiber* supports this conclusion. There, the plaintiff was loading bags of topsoil into her vehicle from a pallet located outside the front of a Farm and Fleet store. *Kleiber,* 942 N.E.2d at 642. In order to obtain the bags of topsoil, the plaintiff walked across an empty wooden pallet lying on the ground. *Id.* Plaintiff’s foot went through one of the slats in the pallet and she fell, injuring her leg. *Id.* at 642–43. On appeal, the court held that, even if “there was no other way to access the topsoil except by crossing the empty pallet,” the deliberate encounter exception did not apply. *Id. at* 649. According to the court, “despite the location of the topsoil, plaintiff had another option available. Plaintiff could have gone into the store and asked for assistance.” *Id.* Similar reasoning applies here.

First, as Defendant points out, there is no evidence that Plaintiff’s chosen route over the forks was the only one available. In fact, Plaintiff conceded that the could have proceeded down another aisle and up the subject aisle if he so desired. [48, at 12.] Nonetheless, Plaintiff asserts that he “would have encountered the unattended forklift because it was partially blocking one of the entrances/exits of the aisle.” [*Id.*] However, he does not provide any support for that assertion and both Plaintiff’s and the forklift driver’s deposition testimony supports the conclusion that there was space on either side of the aisle to get by the forklift. [49, ¶ 12 (“[t]here was enough space for [him] to get by the forklift”); 50, at 72:1–19 (stating that he parked the forklift in the middle of the aisle, parallel to the shelving, so that customers could access the shelves on either side of the aisle). Moreover, even if the forklift was parked at the beginning of the aisle at an angle, Plaintiff has not presented any evidence that he could not have (1) walked around the back of the forklift, or (2)

walked around the front of the forks. See *Steen*, 486 F.3d at 1022 ("summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit'"). Finally, even if he could not have walked around the back of the forklift or walk around the front of the forks, Plaintiff could have "asked for assistance." *Kleiber*, 942 N.E.2d at 649.

The distraction exception is also inapplicable. The distraction exception applies "where the possessor [of land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Bruns*, 21 N.E.3d at 691 (alteration in original) (quoting *Sollami,* 772 N.E.2d at 223). "[T]he distraction exception will only apply," however, "where evidence exists from which a court can infer that plaintiff was actually distracted." *Id.* The "mere fact of looking elsewhere does not constitute a distraction." *Id.* at 691. Indeed, "'[d]istraction exception' cases generally involve situations in which the injured party is distracted from the open and obvious condition because circumstances required that she focus her attention on some other condition or hazard." *True v. Greenwood Manor W., Inc.*, 737 N.E.2d 673, 676 (Ill. App. Ct. 2000); *cf. Ward*, 554 N.E.2d at 233 ("It was also reasonably foreseeable that a customer carrying a large item which he had purchased in the store might be distracted and fail to see the post upon exiting through the door.").

*Kleiber* is again instructive. The plaintiff testified that "she saw the pallet and the holes in the pallet, that she recognized the size of the pallet, and that she saw how high the pallet was off the ground." 942 N.E.2d at 649. In fact, "she walked across the pallet, picked up a bag of topsoil, turned, and fell after taking her first step back * * *." *Id.* Thus, "there was little to no delay between the time that plaintiff recognized the danger and the time when she was injured." *Id.* at 649. In these circumstances, the Illinois Appellate Court concluded that, "defendant had no reason to expect that plaintiff would be so distracted that she would fail to see the holes in the pallet,

would forget about the holes in the pallet, or would fail to protect herself from the danger posed by the holes in the pallet." *Id.* at 648–49.

Here, Plaintiff *simultaneously* saw the item that he was searching for and noticed the forks between him and the item. He then attempted to step over the forks, tripped, and fell. Nothing in the record before this Court suggests that Plaintiff's attention was directed toward any "other condition or hazard," *True*, 737 N.E.2d at 680; rather Plaintiff's attention was fixed on the very item he sought to retrieve as he attempted to step over the fork. In Plaintiff's own words, "I notice[d] they[ ] [were] there, and I attempt[ed] to step over them." [37-4, at 37:21–22.] The distraction exception therefore does not apply. See, e.g., *Bruns*, 21 N.E.3d at 691 (concluding the fact that a pedestrian was looking at the front door of her destination when she tripped on a sidewalk defect did not constitute a distraction).

**B. Defendant did not owe plaintiff a legal duty.**

Plaintiff next asserts that even if the forks were an open and obvious condition, Defendant owed him a legal duty. It is true that "[t]he existence of an open and obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." *Bruns*, 21 N.E.3d at 690. Rather, "[i]n assessing whether a duty is owed, the court must still apply traditional duty analysis to the particular facts of the case." *Jackson v. TLC Assocs., Inc.*, 706 N.E.2d 460, 463 (Ill. 1998). "Application of the open and obvious rule affects the first two factors of the duty analysis: the foreseeability of injury, and the likelihood of injury." *Bruns*, 21 N.E.3d at 690; see also *Belluomini*, 805 N.E.2d at 707 ("plaintiff's discussion of the open and obvious doctrine covers, in substance, the first two factors of the duty test."). "[I]f the danger is open and obvious * * * that means * * * that the first two factors favor the defendant." *Bruns*, 21 N.E.3d at 690. Indeed, the *Bujnowski* court noted that "[n]o published premises-liability negligence case * * *

[has] held both (1) that the open-and-obvious rule applied without exception and (2) that the defendant nonetheless owed the plaintiff a duty." 37 N.E.3d at 397.

"This leaves one more inquiry: do the third and fourth factors—the burden that defendant would incur, and the consequences of imposing that burden—favor plaintiff to the extent that they outweigh the first two factors and thus call for imposing a duty?" *Id.* Here, Plaintiff argues that Defendant should have placed flags around the forklift and that the third and fourth factors therefore support holding Defendant had a duty to Plaintiff as a matter of law. But, as Defendant points out, Plaintiff saw the forks and still attempted to step over them. The only actions that would have certainly prevented the accident would have been to have an employee present around the forklift at all times, or to have stored the forklift outside the store; neither of which Plaintiff has suggested and both of which would have placed a significant burden on Defendant. See *Kleiber*, 942 N.E.2d at 650 (placing duty on defendant to monitor pallets would be burdensome because doing so would require having an employee stationed outside to specifically monitor pallets and immediately remove those that started to run low or became empty to avoid risk that a person might try to cross a low or empty pallet, particularly where the plaintiff never sought assistance from anyone in the store); *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 511 (7th Cir. 2009) (placing burden on defendant would be onerous where plaintiff voluntarily encounters a known risk and where defendant would have to expend significant resources overseeing actions of others); *Belluomini*, 805 N.E.2d at 708–09 (although measures exist that can be taken to prevent injuries, where those measures end up being ineffective and the plaintiff is in a superior position to prevent injury, "the burden of constant vigilance * * * is great"). Consequently, the Court concludes that Defendant did not owe Plaintiff a duty, and thus Plaintiff cannot prevail on his negligence claim.

## IV. Conclusion

For the reasons stated above, the Court grants Defendant's motion for summary judgment [37]. The Court will enter final judgement and close the case.

Dated: February 19, 2019

Robert M. Dow, Jr.
United States District Judge